IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

QUINCY BLAKLEY and           §
KIMBERLY JOHNSON,            §
                            §
        Plaintiffs,          §
                            §
V.                          §           No. 3:21-cv-2422-L
                            §
GOLABS, INC., TOA MOTORS,    §
INC., LONGMAN ZHAO, and      §
QUIONG LI,                   §
                            §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Defendants Golabs, Inc., Tao Motors, Inc., Longman Zhao and Quiong Li have

filed a Rule 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint, *see* Dkt. No.

14, which United States District Judge Sam A. Lindsay has referred to the

undersigned United States Magistrate Judge for hearing, if necessary, and findings

and recommendation, *see* Dkt. No. 19. Plaintiffs Quincy Blakley and Kimberly

Johnson filed a response, *see* Dkt. No 17, and Defendants filed a reply, *see* Dkt. No.

22.

For the following reasons, as explained below, the undersigned recommends

that the motion to dismiss be granted.

**Background**

The following facts are taken from the Amended Complaint, accepting, for

purposes of deciding this motion to dismiss, all well-pleaded facts as true and

viewing them in the light most favorable to Plaintiffs.

Plaintiffs allege that they were employed by all four Defendants, collectively. *See* Dkt. No. 7 at ¶¶ 7, 13, 54. Plaintiffs allege that they worked directly for GoLabs d/b/a Go Trax. *See id*. at ¶ 17. Tao Motors manufactured electric vehicles like scooters, and GoLabs sold, rented, and maintained them. *See id*. at ¶¶ 17, 25. Li was the President and General Manager of both GoLabs and Tao Motors. *See id*. ¶¶ 27, 28. Zhou was the Chief Financial Officer of both GoLabs and Tao Motors. *See id*. at ¶¶ 18, 23.

Blakley was a customer service representative. *See id*. at ¶ 54. He made sales calls and handled calls from GoLabs's and Tao Motors's customers. *See id*. He was employed from November 20, 2018, to February 17, 2020. *See id*.

On January 16, 2020, Blakley overheard Li telling the Customer Service Manager about death threats a former employee made against management and employees. *See id*. at ¶ 64. Blakley had an anxiety attack when he learned of the death threats. *See id*. at ¶ 65. He had previously been diagnosed with anxiety and depression. *See id*. After learning of the death threats, he requested a work-from-home accommodation. *See id*. at ¶ 68. Blakley alleges that, despite his anxiety and depression, "he was quite capable of performing his job but in light of a potential violent threat at work which triggered his anxiety, it prevented him temporarily from working from the office until adequate time passed or he could find a medication that worked." *Id*. at ¶ 73. His request was denied. *See id*. at ¶ 78.

Blakley also alleges that he worked significant overtime hours. *See id.* at ¶ 58. Defendants paid him time-and-a-half overtime for a while but suddenly stopped paying it. *See id.* at ¶ 59. On February 17, 2020 – the day that he was cleared to return to work by his doctor – Blakley requested that he be paid for his overtime hours. *See id.* at ¶ 60. He was terminated two hours later. *See id.*

Johnson was hired in the summer of 2019 as a part-time customer service representative who was scheduled to work approximately 16 hours per week. *See id.* at ¶ 55. She alleges that, on at least five occasions, she worked more than 40 hours per week but was not compensated for her overtime work. *See id.* at ¶ 569. The Amended Complaint contains no other specific allegations concerning Johnson individually.

Plaintiffs sued Defendants for violations of the Fair Labor Standards Act ("FLSA"). Both Blakley and Johnson asserted overtime claims, and Blakley asserted a retaliation claim. Blakley also asserted claims for violations of the Family Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), and Texas Commission on Human Rights Act ("TCHRA"). *See* Dkt. No. 7.

Defendants filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *See* Dkt. No. 14. Defendants assert that all claims against the Individual Defendants (Li and Zhou) should be dismissed because Plaintiffs fail to plead sufficient facts to show that they were employers under the FLSA, FLMA, ADA and TCHRA. They assert that Plaintiffs fail to state an FLMA claim because they fail to plead sufficient facts to show either interference or retaliation under the FMLA. And they assert

that Blakley failed to exhaust administrative remedies or plead sufficient facts to show that he had a qualified disability under the ADA and TCHRA.

The Court should grant Defendants' motion to dismiss because, although Plaintiffs recite the elements of their claims, they fail to allege sufficient facts to establish that those claims are plausible.

## Legal Standards

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205–06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id*. But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347, and the Federal Rules of Civil Procedure "do not countenance dismissal

of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

In addition, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

## Analysis

I.   Plaintiffs fail to state a claim for violations of the FLSA.

    A.   Plaintiffs fail to adequately plead that the Individual Defendants and Tao Motors are "employers" under the FLSA.

        1.   Collective and conclusory allegations are insufficient.

"An employee may have multiple employers under the FLSA, in which case, 'all joint employers are responsible, both individually and jointly, for compliance with all the applicable provisions of the [FLSA].'" *Fernandez v. JaniKing Int'l, Inc.,* No. CV H-17-1401, 2018 WL 539364, at *2 (S.D. Tex. Jan. 8, 2018) (quoting 29 C.F.R. § 7912(a)). "But, it is not enough to allege, in a conclusory or collective manner, that several defendants are a plaintiff's 'employer' for FLSA purposes. Instead, '[w]here a complaint seeks to hold more than one employer liable under the FLSA, some facts at least of the employment relationship must be set forth in order to make out of facially plausible claim of multiple employer liability under the FLSA.'" *Id.* (quoting *Kaminski v. BMW Sugar Land Partners,* Civil Action No. H10-551, 2010 WL 4817057 *2 (S.D. Tex. Nov. 19, 2010)).

Throughout the Amended Complaint, Plaintiffs allege scant facts that would establish an employment relationship on a defendant-by-defendant basis. Instead,

Plaintiffs allege that "Defendants" employed them. This is insufficient, and, on this basis alone, Plaintiffs' Amended Complaint is subject to dismissal without prejudice – where, despite filing the Amended Complaint, it is not clear as to this and the other claims on which the undersigned recommends granting leave to amend that Plaintiffs have pleaded their best case. *See generally Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

> 2.   Plaintiffs fail to adequately allege an employee-employer <u>relationship with Li, Zhou, or Tao Motors.</u>

"To be bound by the requirements of the Fair Labor Standards Act, one must be an 'employer.'" *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (citing 29 U.S.C. §§ 206-207). The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).

The Fifth Circuit has approved use of the "economic realities" test to determine who is an employer under the FLSA. *See Gray v. Powers*, 673 F.3d 354-55 (5th Cir. 2012). To determine whether an individual or entity is an "employer," a court considers whether the alleged employer: "'(1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id*. at 355

"'The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with

the corporation, jointly and severally liable under the FLSA for unpaid wages.'"
*Donovan v. Grim Hotel Co.*, 747 F.2d at 972 (quoting *Donovan v. Agnew*, 712 F.2d
1509, 1511 (1st Cir. 1983)); *see also Hernandez v. Larry Miller Roofing, Inc.*, 628 F.
App'x 281, 284 (5th Cir. 2016). An individual's status as an officer or shareholder
alone will not subject them to FLSA liability absent some showing "where
operational control coincides with one's position as a shareholder, officer, or owner."
*Gray*, 673 F.3d at 355-56 (declining to infer authority to hire and fire based on an
argument that a member or officer has inherent power to fire employees).

The Court must apply the economic realities test to each individual or entity
alleged to be an employer. *See id.* at 355. But all four of the factors need not be
present in each case to find an employee-employer relationship. *See id.* at 357.
Rather, the Court must consider the totality of the circumstances and the economic
reality of the overall relationship. *See Hodgson v. Griffin & Brand of McAllen, Inc.*,
471 F.2d 235, 237-38 (5th Cir. 1973) ("Whether appellant is an employer of the
harvest workers does not depend on technical or isolated factors but rather on the
circumstances of the whole activity; it depends not on the form of the relationship
but on the economic reality." (cleaned up)).

Other than conclusory allegations concerning Li and Zhou based on their
inherent authority as officers or shareholders of GoLabs, Plaintiffs fail to make
factual allegations to show that Li had the power to hire and fire, determine the rate
and method of their pay, or maintained employments records. Blakley alleges that
Li, as GoLabs President, was included in emails concerning his overtime claims and

termination. *See id*. at ¶¶ 34, 38, 42. Without additional factual allegations, such as Li's initiation of or participation in those emails, these allegations may show that Li had notice of the overtime claims and termination but do not to allow the Court to draw the reasonable inference that Li directly supervised and had operational control of Blakley's work conditions.

Blakley alleges that Zhou fired him. *See* Dkt. No. 7 at ¶¶ 32, 36. And Blakley alleges that Zhou directly supervised and controlled his work conditions and schedules because Zhou was his primary contact concerning FLSA overtime issues. *See* Dkt. No. 7 at ¶ 37. Plaintiffs allege that Zhou was involved in determining their pay and method of payment, but, other than the allegation that Zhou denied them overtime pay, there are no factual allegations to show how Zhou was involved. *See id*. at ¶ 32, 39. There are no factual allegations that Zhou maintained employment records. But, at the pleadings stage, Plaintiff need not "prove (rather than plausibly allege) that" Zhou was their employer for FLSA purposes, and these allegations meet the plausibility standard. *Molina-Aranda v. Black Magic Enterprises, L.L.C.*, 983 F.3d 779, 788 (5th Cir. 2020).

There are no allegations by which the Court can apply the economic realities test to Tao Motors.

The Court should grant the motion to dismiss, without prejudice, as to Li and Tao Motors.

B.   <u>Plaintiffs have not adequately pleaded FLSA employer coverage.</u>

To establish a claim for unpaid overtime under the FLSA, a plaintiff must

prove that he was an "employee[ ] engaged 'in the production of goods for commerce' ('individual coverage') *or* 'employed in an enterprise engaged in commerce or in the production of goods for commerce' ('enterprise coverage')." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (citing 29 U.S.C. § 207(a)(1)) (emphasis in original); *see also* 29 U.S.C. § 206(a). "*Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Martin*, 955 F.2d at 1032 (emphasis in original).

For purposes of establishing individual coverage, courts apply a practical test, which looks to whether an employee's work "is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mendoza v. Detail Solutions, LLC*, 911 F. Supp. 2d 433, 439 (N.D. Tex. 2012). "[C]ourts routinely look to whether the employee's work engages him in the actual movement of persons or things." *Id.* at 440 (internal quotation marks omitted). "There is no *de minimus* requirement. '[A]ny regular contact with commerce, no matter how small, will result in coverage.'" *Sobrinio v. Med. Ctr. Visitor's Lodge, Inc.*, 474 F.3d 828, 829 (5th Cir. 2007) (quoting *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122, 1124 (5th Cir. 1979)).

But an employee's work that merely affects commerce is not sufficient to establish individual coverage. *See Barr v. Custom Design & Installation, Inc.*, No. 3:13-cv-4925-M, 2015 WL 1255870, at *2 (N.D. Tex. Mar. 19, 2015). The work must be "entwined with the continuous stream of interstate commerce," and it is not sufficient that the employee "used products that had traveled in interstate

commerce." *Sontay v. Hin's Garden*, Civ. A. H:13-cv-3721, 2014 WL 6722507, at *4 (S.D. Tex. Nov. 26, 2014). Working on goods that have previously moved through interstate commerce is not considered "part of the functioning of an instrumentality or facility of interstate commerce," and even purchasing products that have been manufactured out of state is insufficient to satisfy individual coverage. *Stanley v. Sawh*, Civ. A. No. H-13-3284, 2016 WL 561177, at *4 (S.D. Tex. Feb. 12, 2016).

For purposes of establishing enterprise coverage, the FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as one that

> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $ 500,000 (exclusive of excise taxes at the retail level that are separately stated)[.]

*Blundell v. Lassiter*, No. 3:17-cv-1990-L-BN, 2018 WL 6738046, at *7 (N.D. Tex. May 21, 2018) (citing 29 U.S.C. § 203(s)(1)).

The first prong of the enterprise coverage definition can be met in one of two ways: (1) either by the "engaged in commerce" clause or (2) the "handling" clause. The "engaged in commerce" clause can be analyzed essentially in the same manner as individual coverage is analyzed, although the question as to individual coverage is whether the plaintiff himself engaged in interstate commerce, whereas the question in an enterprise coverage analysis is whether any two or more of the business's

employees engaged in interstate commerce. *See Mendoza*, 911 F. Supp. 2d at 439 &
n.4. The handling clause requires the court to find that an employer had more than
one employee "handling, selling, or otherwise working on" goods that have moved in
interstate commerce. *See* 29 U.S.C. § 203(s)(1)(A)(i); *Mendoza*, 911 F. Supp. 2d at
441.

Defendants assert that the allegations in Plaintiffs' Amended Complaint do
not include sufficient facts to establish either individual coverage or the first prong
of enterprise coverage. They do not challenge the sufficiency of the allegations as to
the second prong of enterprise coverage.

Plaintiffs allege that Tao Motors manufactured and GoLabs sold, maintained,
and kept an inventory of electric scooters, which were designed to move persons.
Blakley alleges that he worked for GoLabs as a customer service telephone
representative selling and fielding complaints about the scooters. Johnson alleges
that she was a part-time customer service representative. They both allege that their
"regular job duties involved the sale, repair, and rental of items involving the
movement of things and persons as the electric scooter being sold was an electric
scooter designed to move person." *See id*. at ¶ 61.

But critically missing are any factual, non-conclusory allegations that the
electric scooters were involved in interstate commerce. And, without factual
allegations to establish that element, Plaintiffs fail to adequately plead facts
showing individual or enterprise coverage under the FLSA. The Fifth Circuit has, in
this context, warned against conflating "Plaintiffs' ultimate burden of proof with

what must be plausibly alleged," *Molina-Aranda*, 983 F.3d at 787, but here Plaintiffs have not alleged what must be plausibly alleged, and the motion to dismiss should be granted without prejudice on this ground as well.

II.     <u>Blakley fails to state a claim under the FMLA.</u>

In the Amended Complaint, Blakley asserts that "Defendant violated its duty under the FMLA to identify the FMLA need and provide relevant paperwork for Plaintiff to apply for time off due to his serious health concern." *Id*. at ¶ 96. He also asserts that "Defendant" retaliated against him for seeking leave under the FMLA and that he was terminated after "Defendant" discovered Blakley had an FMLA need. *See id*. at ¶¶ 97, 98.

A.     Blakley fails to adequately plead the Individual Defendants and <u>Tao Motors were his employers under the FMLA.</u>

The FMLA applies to employers engaged in commerce with fifty or more employees during each of twenty or more calendar workweeks in the calendar year, or the year preceding the calendar year, in which the alleged violation occurred. *See* 29 U.S.C. at § 2611(4)(A)(i). The federal regulations implementing the FMLA provide that "[n]ormally the legal entity which employs the employee is the employer under the FMLA." 29 C.F.R. § 825.104(c). But separate entities may be deemed to be parts of a single employer for purposes of the FMLA if they meet the "integrated employer" test. *Id*. at § 825.104(c)(2). Where this test is satisfied, the employees of all the entities making up the integrated employer are counted in determining employer coverage. *See id*.

The integrated employer test examines four factors to determine whether multiple entities should be considered as a single employer: (1) common management; (2) interrelation between operations; (3) centralized control of labor relations; and (4) degree of common ownership/financial control. *See id.* No single factor is dispositive, and the entire relationship among the separate entities should be viewed in its totality. *See id.*

Blakley alleges that GoLabs has 15 or more employees and that all four Defendants collectively have 50 or more employees, *see* Dkt. No. 7 at ¶¶ 43, 51; that Tao Motors manufactured the exact same vehicles sold, repaired, and maintained by GoLabs, *see id.* at ¶ 25; and that GoLabs's and Tao Motors's corporate headquarters were located at the same physical address and GoLabs and Tao Motors shared employees, management, ownership, and job functions. *See id.* at ¶¶ 22, 25, 26.

But there are no factual allegations as to the number of employees that Tao Motors, Li, or Zhou employed. Nor does Blakley provide facts concerning which employees GoLabs and Tao Motors shared, who actually managed GoLabs and Tao Motors, and what job functions the two entities shared.

Blakley's allegations are not sufficient to allow the Court to draw a reasonable inference that an employer-employee relationship existed between Blakley and Li, Zhou, or Tao Motors or that GoLabs and Tao Motors were a single employer of FMLA cover

But, even if they were sufficient, for the reasons stated above, Blakley fails to plead facts to allow the Court to draw the reasonable inference that that GoLabs and

Tao Motors were engaged in interstate commerce.

As to the FMLA claims, the motion to dismiss should be granted without prejudice on this ground.

C.     <u>Blakley fails to sufficiently plead interference under the FMLA.</u>

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" a substantive FMLA right or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this chapter." *Id.* § 2615(a)(1) & (2). "To establish a prima facie case of interference under FMLA, a plaintiff must show: (1) he was an eligible employee; (2) his employer was subject to the FMLA's requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave, and (5) his employer denied him the benefits to which he was entitled under the FMLA." *Caldwell v. KHOU-TV*, 850 F.3d 237, 245 (5th Cir. 2017) (citing *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013)).

Blakley fails to sufficiently allege that he provided proper notice or was entitled to leave. The FMLA requires a covered employer to allow an eligible employee up to twelve weeks of unpaid leave if the employee suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(A).

In the Amended Complaint, Blakley alleges that his "disability and serious health condition under the FMLA was diagnosed anxiety/depression." Dkt. No. 7 at ¶ 71. He also alleges that, "[d]espite Plaintiff Blakley's anxiety/depression, he was

quite capable of performing his job but in light of a potential violent threat at work which triggered his anxiety, it prevented him temporarily from working from the office until adequate time passed or he could find a medication that worked." *Id.* at ¶ 74.

The FMLA only provides an entitlement to take leave, not to work from home. *See* 29 U.S.C. § 2612(a)(1)(A); *Bennett v. Girl Scouts of Northeast Texas*, No. 4:09cv443, 2010 WL 723794, at *3 (E.D. Tex. Feb. 25, 2010). Blakley admits that his anxiety/depression only prevented him from working from the office and that he was capable of very easily performing his work from home. *See* Dkt. No. 7 at ¶¶ 73, 74. These allegations are insufficient to allow the Court to draw a reasonable inference that Blakley's health condition rendered him unable to perform his job functions.

As a general rule, in cases involving foreseeable absences, the FMLA requires an employee to provide the employer with at least thirty days of advance notice. *See* 29 C.F.R. § 825.302(a); *Greenwell v. State Farm Mut. Auto. Ins. Co.*, 486 F.3d 840, 842 (5th Cir. 2007). For unforeseeable absences, "an employee must provide notice to the employer as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. 825.303(a); *see also Greenwell*, 486 F.3d at 842.

Employees need not "expressly assert rights under the FMLA or even mention the FMLA but may only state that leave is needed. The employer will be expected to obtain any additional required information through informal means." 29 C.F.R. § 825.303(b). "The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time

off for a serious health condition." *Satterfield,* 135 F.3d at 977 (quoting *Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 764 (5th Cir. 1995)).

Blakley alleges that his panic attack was triggered when he learned about the death threats on January 16, 2020, and that, as a result, he requested that he be allowed to temporarily work from home to accommodate his anxiety/depression. *See id.* at ¶¶ 67, 73. He also alleges that he obtained a doctor's note on January 16, 2020, stating that he needed to be off work until February 17, 2020, *see id.* at ¶¶ 67, 76, and another on February 11, 2020, stating that he was entitled to an accommodation of working from home, *see id.* at ¶ 80.

But he alleges no facts to allow the Court to draw a reasonable inference that he provided sufficient information to reasonably apprise Defendants of his employee's request to take time off for a serious health condition. For example, he alleges no facts to at least support an inference that he actually requested leave, when he requested leave, or from whom he requested leave. He alleges no facts showing that he gave proper notice of an intention to take FMLA leave or that Defendants were aware of any serious medical condition that rendered him unable to work.

As to Blakley's FMLA interference claim, the motion to dismiss should be granted without prejudice on this ground.

D.    Blakley fails to sufficiently plead retaliation under the FMLA.

To establish a prima facie case for retaliation under the FMLA, the plaintiff must show that (1) he was protected under the FMLA, (2) he suffered a materially

adverse action, and (3) there is a causal link between protected activity under the FMLA and the adverse action. *Wheat v. Florida Parish Juv. Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (elements of prima facie case of retaliation under both Title VII and the FMLA).

Blakley makes conclusory allegations that he was terminated two hours after sending an email requesting overtime pay, *see* Dkt. No. 7 at ¶¶ 60, 89; due to his disability, which he alleges Defendants knew about prior to the incident causing the panic attack, *see id.* at ¶66; and because he sought leave under the FMLA and Defendant knew he had an FMLA need, *see id.* at ¶ 97.

But, as discussed above, Blakley fails to allege sufficient facts to show that he was protected under the FMLA or suffered a materially adverse action because he fails to allege sufficient facts to show that he had a serious condition – that is, one that rendered him unable to work, or that he requested or gave notice of his intent to take FMLA leave.

As to Blakley's FMLA retaliation claim, the motion to dismiss should be granted without prejudice on this ground.

III.   Blakley fails to state claims under the ADA and TCHRA.

A. Blakley adequately pleads exhaustion of administrative remedies.

Before a plaintiff may pursue ADA claims in federal court, he must first exhaust all available administrative remedies. *See Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017); 42 U.S.C. § 6104(e)(2) ("No action … shall be brought … if administrative remedies have not been exhausted.); *see also EEOC v.*

*Waffle House, Inc.,* 534 U.S. 279, 285 (2002) (noting that the ADA incorporates by reference Title VII's administrative procedures). A plaintiff has exhausted the available remedies once he: (1) files a timely complaint with the EEOC, (2) the agency dismisses the claim, and (3) it informs him of his right to sue in federal court. *See Bouaziz v. AZTR Corp.*, No. 3:10-cv-53-B, 2010 WL 2813403, at *1 (N.D. Tex. July 9, 2010).

Likewise, plaintiffs claiming violations under the TCHRA must first exhaust administrative remedies prior to bringing civil action. *See id*. at *2 (citing *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex. 1991) (noting that the purpose of TCHRA is to provide for the execution of policies embodied in Title VII)). Exhaustion occurs when a Plaintiff receives a right to sue letter or waits 180 days for the complaint to be resolved. *See id*.

Blakley alleges that he filed a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division ("TWC") for disability discrimination; he received a right-to-sue letter from the TWC on June 30, 2021; and he received a right-to-sue letter from the U.S. Equal Employment Opportunity Commission ("EEOC") on August 27, 2021. *See id*. at ¶ 11.

These allegations are sufficient at the motion-to-dismiss stage to show that Blakley exhausted administrative remedies.

    B.   <u>There is no claim against individuals under the ADA and TCHRA.</u>

Blakley cannot state a claim against Li or Zhou under the ADA and TCHRA. Although the Fifth Circuit has not directly addressed the question of whether

an employer's agent or employee may be held liable under the ADA, several circuit courts as well as district courts in the Fifth Circuit have addressed the issue and concluded that individuals are not liable under the ADA. *Lewis v. DBI Servs.,* SA-19-CV-662-DAE, 2020 WL 248703, at *3 (W.D. Tex. Jan. 15, 2020) (listing cases). The ADA's definition of 'employer' is essentially identical to the definition contained within Title VII. *See* 42 U.S.C. § 12111(5)(A) ('The term "employer" means a person engaged in an industry affecting commerce who has 15 or more employees for each working day ... and any agent of such person'). And courts interpret the ADA consistent with Title VII's provisions. *See Lea v. Nissan Motor Acceptance Corp.*, No. 3:21-cv-2002-D-BN, 2021 WL 4445302, at *1 (N.D. Tex. Aug. 27, 2021); *see also Dunn v. Folgers Coffee Co.*, Civ. A. No. 21-1452, 2022 WL 226333, at *5 (E.D. La. Jan. 25, 2022) (noting courts have reached this conclusion in light of (a) the similarities between the definition of "employer" in Title VII and the ADA, (b) the similar purposes of the two statutes, (c) the Fifth Circuit's consistent holdings that individuals cannot be held liable under Title VII in either their individual or official capacities, and (d) the weight of authority outside of the Fifth Circuit).

Similarly, "'Texas state and federal courts have uniformly held that supervisory personnel are not liable in their individual capacity under the TCHRA.'" *Jones v. Dallas Cnty.*, No. 3:11-CV-2153-D, 2013 WL 6388441, at *5 (N.D. Tex. Dec. 6, 2013) (quoting *Marabella v. Autonation U.S.A. Corp.,* 88 F. Supp. 2d 750, 752 (S.D. Tex.2000)); *see also Jenkins v. Guardian Indus. Corp.,* 16 S.W.3d 431, 439 (Tex. App. 2000, pet. denied) ("[S]upervisors and managers are not liable in their

individual capacities for alleged acts of discrimination under the TCHRA."); *City of Austin v. Gifford,* 824 S.W.2d 735, 742 (Tex. App.-Austin 1992, no writ) ("The [TCHRA] does not create a cause of action against supervisors or individual employees.").

As to Blakley's ADA and TCHRA claims against Li and Zhou, the motion to dismiss should be granted with prejudice.

> C.   Blakley fails to allege facts showing Tao Motors was an employer or <u>joint employer under the ADA and TCHRA.</u>

Blakley alleges that GoLabs and Tao Motors are liable under the joint employer theory. *See* Dkt. No. 7 at ¶¶ 14, 101.

The Fifth Circuit has adopted the "hybrid economic realities/common law control test" to determine the existence of an employment relationship for purposes of the ADA. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015). "The right to control an employee's conduct is the most important component of this test." *Id.* (quoting *Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5 F.3d 117, 119 (5th Cir. 1993)). In examining the "control" component, the court considers "whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule." *Id.* (quoting *Deal*, 5 F.3d at 119). The economic realities component "focuse[s] on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id.* (quoting *Deal*, 5 F.3d at 119).

Other than conclusory allegations that he was employed by both GoLabs and Tao Motors, Blakley alleges that Tao Motors manufactured the exact same vehicles sold, rented, and maintained by GoLabs. See Dkt. No. 7 at ¶ 25. But Blakley alleges no facts that would allow the Court to draw the reasonable inference that Tao Motors had the right to control over him or his work.

As to Blakley's ADA and TCHRA claims against Tao Motors, the motion to dismiss should be granted without prejudice on this ground.

D.      <u>Blakley fails to plead sufficient facts to show disability discrimination.</u>

Blakley asserts a claim for disability discrimination under the ADA and TCHRA based on the denial of his request for a work-from-home accommodation and subsequent termination. Defendants move to dismiss the ADA and TCHRA claims on the ground that Blakley has not plausibly alleged that he was disabled.

The ADA and TCHRA prohibit retaliation against an individual because the individual opposed any act or practice prohibited by the ADA, or participated in an investigation, proceeding, or hearing under the ADA. *See* 42 U.S.C.A. § 12203(b); TEX. LABOR CODE § 21.055. These provisions are directed not at individuals who suffer discrimination on account of a disability, but who suffer adverse consequences for opposing a discriminatory practice or making a charge of discrimination under the ADA. *See id.*; *see also Lyons v. Katy Indep. Sch. Dist.,* 964 F.3d 298, 305 (5th Cir. 2020).

Blakley fails to state a retaliation claim because he alleges that he was terminated due his disability, specifically for requesting a work-from-home

accommodation.

To prevail on an ADA failure-to-accommodate claim, an employee must allege that: (1) he is a "qualified individual with a disability"; (2) "the disability and its consequential limitations were 'known' by the covered employer"; and (3) "the employer failed to make 'reasonable accommodations' for such known limitations." *Credeur v. La. Through Office of Atty. Gen.*, 860 F.3d 785, 792 (5th Cir. 2017) (quoting *Neely v. PSEG Tex., Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013)). The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C § 12102(1). Under the ADA, to "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). Similarly, the TCHRA provides that it is unlawful for an employer "to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability ... unless [the employer] demonstrates that the accommodation would impose an undue hardship on the operation of the business.". TEX. LABOR CODE § 21.128(a).

Blakley alleges that he is disabled by "anxiety/depression." Dkt. No. 7 at ¶ 65. Throughout his Amended Complaint, he refers to the two conditions together or uses

the terms interchangeably. He alleges that he told Defendants about his anxiety and depression on one or more occasions before his anxiety attack on January 16, 2020, but he does not allege that Defendants knew he suffered from anxiety attacks that affected his ability to work from the workplace. *See id.* at ¶ 66. He also alleges that, despite his anxiety/depression, he could perform his job, but his anxiety prevented him from temporarily working from the office although he could work from home very easily. *See id.* at ¶¶ 73, 74. And he alleges that he obtained a doctor's note stating that he should be entitled to an accommodation that allowed him to work from home. *See id.* at ¶ 80.

But Blakley has provided no facts to show that his anxiety and depression substantially limit a life activity. Instead, he alleges that he can work, just not from Defendants' office, and that he needs to work from home temporarily. These allegations are insufficient to show that Blakley has a disability that would entitle him to an accommodation under the ADA.

As to Blakley's ADA and TCHRA claims, the motion to dismiss should be granted without prejudice on this ground.

## Recommendation

The Court should grant Defendants' FRCP 12(b)(6) Motion to Dismiss Plaintiffs' Amended Complaint [Dkt. No. 14] with prejudice as to Blakley's FLSA claim against Li and Zhou and without prejudice as to Plaintiffs' FLSA overtime claim, Blakley's FLSA retaliation claim against Li and Tao Motors, and Blakley's FMLA, ADA and TCHRA claims, and should grant Plaintiffs 21 days from the date

of any order adopting these Findings, Conclusions, and Recommendation in which to file a second amended complaint as to those claims that should be dismissed without prejudice and should order that, if Plaintiffs fail to do so, the case will be dismissed with prejudice without further notice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 8, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE