**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| QUINCY BLAKLEY & | § | |
| KIMBERLY JOHNSON | § | |
| | § | |
| Plaintiffs, | § | CIVIL ACTION NO. 3:21-cv-2422 |
| | § | |
| v. | § | |
| | § | |
| GOLABS, INC., TAO MOTORS, INC., | § | |
| LONGMAN ZHAO & QUIONG LI | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiffs, Quincy Blakely and Kimberly Johnson, ("Plaintiffs") bring this action against Defendants GoLabs, Inc. and Tao Motors, Inc., Longman Zhao and Quiong Li for violating the laws of the United States of America, as well as the State of Texas, and alleges the following:

**I.      PARTIES**

1.      Plaintiff, Quincy Blakely, is an individual who is a resident of Denton County, Texas and can be reached by and through her counsel of record, Vincent Bhatti and Ditty Bhatti, The Bhatti Law Firm, 5700 Tennyson Parkway, Suite 300, Plano, TX 75024.

2.      Plaintiff, Kimberly Johnson, is an individual who is a resident of Denton County, Texas and can be reached by and through her counsel of record, Vincent Bhatti and Ditty Bhatti, The Bhatti Law Firm, 5700 Tennyson Parkway, Suite 300, Plano, TX 75024.

3.      Defendant, GoLabs, Inc. is a Texas corporation that is authorized to do and does business in Dallas County, Texas and has appeared in this action.

4.      Defendant, Tao Motors, Inc. is an corporation that is authorized to do and does business in Dallas County, Texas and has appeared in this action.

5.      Defendant, Longman Zhao, based on all information and knowledge, is an individual officer and/owner equity owner of both Tao Motors, Inc. and GoLabs, Inc. who is a resident of Denton County, Texas and has appeared in this action.

6.      Defendant, Quiong Li, based on all information and knowledge, is an individual officer and/or equity owner who is a resident of Denton County, Texas and has appeared in this action.

## II.      JURISDICTION, VENUE, AND DISCOVERY PLAN

7.      Plaintiffs Blakely and Johnson were employed by GoLabs, Inc., Tao Motors, Inc. Longman Zhao and Quiong Li (collectively referred to as "Defendants") within the meaning of the Fair Labor Standards Act, 29 U.S.C. §201 et seq. ("FLSA"), the Family Medical Leave Act ("FMLA"), the American with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA").  At all times hereinafter mentioned, Plaintiffs were individual employees who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§206-207, FMLA, ADA, and TCHRA.

8.      Defendants are all engaged in interstate commerce or the production of goods for interstate commerce within the meaning of the FLSA, FMLA, and ADA are obligated to ensure that all employees are paid in accordance with the FLSA.

9.      Plaintiff's damages are within the jurisdictional limit.

10.      Venue is proper as to all parties in Dallas District, because the facts that are basis of this lawsuit all occurred in Dallas County and Defendants either do business or live in Dallas

District.  By all knowledge and belief, Defendants reside in Dallas District and all Defendants do business in Dallas District.

11.     All conditions precedent were performed or have occurred.  Plaintiff Quincy Blakely filed a Complaint of Discrimination with the Texas Workforce Commission Civil Rights Division ("TWC") and received a Right to File Civil Action dated June 30, 2021, for disability discrimination made the basis of this lawsuit.  Thereafter, Plaintiff Quincy Blakely timely filed the lawsuit with the Dallas District Court on August 27, 2021. Plaintiff also received a right to sue from the U.S. Equal Employment Opportunity Commission on November 4, 2021.  Plaintiff Quincy Blakely timely exhausted his administrative remedies pursuant to the ADA and TCHRA.

### III.     FACTS

12.     At all times relevant to this case, GoLabs, Inc. ('Golabs"), Tao Motors, Inc. ("Tao"), Longman Zhao ("Zhao"), and Quiong Li ("Li") (collectively referred to hereinafter as "Defendants") were an "employer" of Quincy Blakely and Kimberly Johnson (collectively referred to hereinafter as "Plaintiffs") within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), the FMLA, ADA and TCHRA.

13.     More specifically, Plaintiffs both worked for Golabs and Tao by handling customer service and sales calls for both GoLabs and Tao.

14.     Plaintiffs handled work for both companies as both companies operated as basically one company.  The operations of Tao and Golabs who operates under a d/b/a named Gotrax are the same.

15.     Based on all information and knowledge Tao has a parent company of Taotao Vehicles Company, Ltd based in China who manufactures the scooters and items that GoLabs/Tao sells under the name GoTrax in the United States.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                                    **PAGE 3**

16.     By all information and knowledge, Taotao Motors, a Chinese company, appears to simply be masking it's face in the United States under the name GoLabs/Tao Motors while being heavily in charge of the operations.

17.     By all information and knowledge, GoLabs and Tao Motors share common ownership namely between Quiong Li ("Li") and Longman Zhao ("Zhao").

18.     GoLabs and Tao Motors share the same physical address and office space as listed on the Tao Motors website as 2202 Luna Road in Carrollton, Texas and on Google's address for Tao Motors and on GoLabs Texas Secretary of State filing.

19.     GoLabs shares the same address and offices as Tao Motors per the Texas Secretary of State filing.  Exhibit C.

20.     In a "datanyze" website listing of Tao Motors, it also listed Zhao as CFO of Tao Motors.

21.     On his LinkedIn profile, Li is listed as the "General Manager at Tao Motor."

22.     Zhao's LinkedIn profile lists him as he CFO of Tao only, and he is listed on the Gotrax website as the CFO of Golabs and therefore serves in the same Executive/Officer role for "both" companies simultaneously.

23.     Li is listed as both President and Director of GoLabs, Inc under the Texas Comptroller website according to its Texas Secretary of State filings.

24.     Zhao is listed as the exclusive contact person for numerous FCC ID's for various GoLab products.

25.     Zhao is listed on Gotrax website as its CFO.

26.     Gotrax is a d/b/a/ for Golabs, Inc., the defendant in this case, as it has been listed in numerous current litigation including a case in the 298th District Court of Dallas County (Case No. DC-22-07407).

27.     Gotrax is further listed as a d/b/a for GoLabs, Inc. on the Texas Secretary of State Website.

28.     GoLabs and Tao Motors share management between Qiong Li and Longman Zhao based on the facts and evidence provided above.

29.     Based on all information and knowledge and the experience of both Plaintiffs, GoLabs and Tao Motors are intimately involved and operate for all intents and purposes as one company.

30.     Based on all information and knowledge, Zhao and Li were owners and managers and executives and officers of both GoLabs and Tao Motors and they operated out of the same location/office while both companies were involved in the sale, manufacturing, and servicing of electric scooters and other similar motorized products.

31.     Currently, the Golabs, Inc d/b/a website lists a cryptic character known as "M.C." as CEO of the company without any further identifying information.  Nevertheless, Qiong Li known commonly as 'Terry' at GoLabs is the only person listed on the Texas Comptroller listing as both President and Director while "M.C." is not listed anywhere that can be found using public tools.

32.     On the Golabs website, it specifically says under the section entitled "Our Story" that:  "For over 20 years Tao Motors worked to become one of the largest gas vehicle producing factories."  Further it states, "Driven by the GOTRAX vision of personal electric vehicles being the future of commuting, and backed by Tao Motors the expertise in manufacturing the partnership

quickly took off."   Further, the website goes on to state that: "GOTRAX products can be found on many major marketplaces and retailers including but not limited to; Amazon, Walmart, Target, Dunham's, Academy Sports and many independent dealers."  Exhibit P.

33.    By all information and knowledge available, GoLabs sells its scooter and bike products across the United States and therefore directly engages in interstate commerce as an enterprise.

34.    Further, based on its own website, GoLabs is selling its products through major national and international retailers such as Walmart, Target, Academy Sports and Amazon which all participate in interstate commerce given their size and scope.

35.    Further, Golabs sells and services its products for transportation of individuals that do cross state lines.

36.    Further, Plaintiffs both received sales, service and support customer service calls and contacts from customers across numerous states within the United States and therefore participated directly in interstate commerce.  The entire nature of Plaintiffs' jobs were to engage customers regularly on an interstate basis making sales of products and providing service and support by phone.

37.    Under the FLSA, both Plaintiffs were regularly, meaning on a daily basis, fielding calls of a customer service and sales nature which involved the handling, selling or otherwise working on good or materials that have been moved in or produced for commerce by any person, and the enterprise of Golabs and Tao did gross volume sales not less than $500,000.00.

38.    So, both Plaintiffs engaged in commerce by daily being involved in selling of interstate goods, namely scooters and parts (among other things), across state lines and in fact, using international Chinese suppliers.

39.     In addition, many more than two (2) employees, including both Plaintiffs were engaged in selling and handling or interstate goods, namely scooters and parts (among other things) across state lines and in fact, using international Chinese suppliers.

40.     The fact is that GoLabs and Tao scooters were sold across state lines.  They were sold to gigantic national retailers across state lines.  They were supplied by their product across international lines and state lines from their Chinese parent company.  Clearly, GoLabs and Tao engaged in interstate commerce as defined by the FLSA.

41.     To the extent that Plaintiffs were jointly employed by Tao who produced and manufactured items in China and then used their U.S. arm, GoLabs to distribute the items across the United States, Plaintiffs both regular engaged in interstate commerce and Tao and Golabs whole business model is to sell their items and move their items between states.

42.     Based on all information and knowledge available to it, Tao builds its products outside the United States, particularly China, and has their products shipped to the United States in different states and ships its products to multiple states, therefore participating in interstate commerce.

43.     Based on all information and knowledge available, GoLabs is an enterprise under the FLSA that makes over $500,000.00.

44.     Based on all information and knowledge available, Tao is an enterprise under the FLSA that makes over $500,000.00.

45.     In fact, most, if not all of Golabs/Tao employees were engaged in the same or similar interstate commerce business as both Plaintiffs.

46.     Based on all information and knowledge, Zhao and Li (individually and as owners/executives/officers of both Tao and GoLabs) have the power to hire and fire, supervise and

control employee work schedules and conditions of employment, determine the rate of pay, and maintain employee records as they directly responded to Plaintiff's overtime issues and directly addressed Plaintiff's FMLA and ADA requests.

47.     As such, Zhao, as Chief Financial Officer of both Tao and GoLabs is established by numerous internal company emails between Zhao and Blakely in which his email signature indicates he is the CFO of GoLabs.  Exhibit K.

48.     Based on all the facts asserted above, Plaintiff asserts that Tao Motors and Golabs, Inc. are both employers of Plaintiffs under the FLSA, FMLA, and ADA as they clearly have common management (Zhao was the CFO of both Golabs and Tao and Li is listed as President/Director of Golabs and General Manager of Tao), they share the same offices, the same employees (Plaintiffs worked for both entities), the same operations (i.e. manufacture and sale of scooters and similar products), and they basically operate as one company in every manner.

49.     Plaintiff further asserts that both Zhao and Li were Plaintiff's employers under the FMLA and as executive managers/owners of both Golabs and Tao that they both employed all GoLab/Tao employees that were over 50 in number.

50.     Plaintiff further asserts that all Tao Motors employees were also GoLabs employees and therefore Tao also had fifty (50) employees.

51.     Plaintiff further asserts again that Golabs itself had over fifty (50) employees.

52.     GoLabs and Tao Motors were both managed by Zhao and Li and all four of these Defendants meet the definition of employer under the FMLA.

53.     Since, GoLabs, Tao Motors, Zhao and Li all had more than 50 shared employee (all shared) and Blakely worked more than 1250 hours and 12 months before his request in January 2020, he was therefore an eligible employee under the FMLA in light of his serious medical

condition, namely anxiety and depression treated by a medical doctors and pharmaceutical medications prescribed by said doctors, and all employers including GoLabs, Tao, Zhao and Li were therefore subject to the FMLA requirements.

54.     Since Blakely met both the criteria for eligibility including working 1250 hours, 12 months and 50 employees and he had a serious health condition, namely anxiety/depression that required medication and was debilitating in certain circumstances, he was therefore entitled to protected leave under the FMLA.  He was entitled to leave under the FMLA, because he met all requirements under the FMLA and he suffered from a serious health condition that made him unable to perform the functions of the job (without a reasonable accommodation under the ADA or time off under the FMLA).

55.     But, in light of the fact that all defendants failed to engage in the interactive process and otherwise approve a reasonable accommodation of working from home, this left Blakely with the only option to take FMLA time off which was also not approved as needed.

56.     Blakely gave proper notice to Defendants verbally and by several emails and even by submitting doctors notes and he was denied his FMLA leave.  He was not presented with appropriate and legal FMLA paperwork once the need for time off was identified as a potential solution.

57.     Defendants failed to engage in the interactive process under the ADA.  Blakely was capable of performing his duties at home but not at the office at the time.

58.     Defendants presented that working from home was not an option for Plaintiff as an ADA accommodation.

59.     Therefore, Plaintiff's only option was to work from the office.

60.     Based on their failure to engage in the ADA interactive process and the denial of a reasonable accommodation to work from home, Plaintiff could not work from the office based on his serious health condition namely severe anxiety and depression as diagnosed by a medical doctor and for which he took medication and which could result in severe consequences if triggered such as inability to mentally concentrate, inability to contain emotions, dangerously high blood pressure, fainting, heart attack and even death.

61.     As such, this situation triggered the need for FMLA time off which was requested by Plaintiff.

62.     Defendants responded by violating their responsibility under the FMLA to provide FMLA paperwork to initiate the time off.

63.     As such, Defendants violated Plaintiff's FMLA rights.

64.     Blakely requested leave and time off as an alternative to not being able to work from home.

65.     Blakely was denied his FMLA rights.

66.     Blakely was asked to provide a note by Zhao and Ms. Deneis Matos ("Matos").

67.     Blakely provided a doctor's note indicating that time off was an appropriate course of action.

68.     Blakely was denied his FMLA rights again after meeting Defendants' requirements.

69.     Blakely requested leave of Ms. Matos, the director of customer experience, Zhao and Terry (i.e. Li and possibly M.C. (CEO of GoLabs) per the Gotrax website) through email and by phone on or about January 16, 2020.

70.     Li was known as Terry at both GoLabs and Tao.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                                    **PAGE 10**

71.     Blakely    provided    notice    of    his    anxiety/depression    serious    health condition/disability indicated above before the incident on January 16, 2020 and through email and phone communications after that date.  Defendants were aware of Blakely's anxiety condition. Blakely made Defendants aware that he suffered from anxiety attacks as a result of the death threats being made against employees and management of GoLabs and Tao.

72.     Blakely made Defendants aware that Plaintiff's doctor ordered time off to deal with the situation to enable him to seek different or new or higher dose medication.  Blakely made Defendants aware that working from home was a potential option that would enable him to continue working while addressing his serious health condition which was caused by his presence at the workplace.

73.     Defendants then proceeded to terminate Blakely in retaliation for requesting such FMLA rights (among other rights that were asserted).

74.     Blakely was terminated after requesting and presenting Defendants with a situation which FMLA protected leave was required under the FMLA.  He was told by Defendants to bring a doctors note which stated the same and he did so.  Instead of granting leave in compliance with the FMLA, Defendants decided to summarily terminate Blakely in violation of the FMLA and in retaliation for asserting his FMLA rights which is also in violation of the FMLA retaliation provisions.

75.     Most, if not all, employees (but definitely Plaintiffs) worked for both Tao and GoLabs in their daily activities and operations as they sold Tao scooters that were also labeled as Golab scooters that were further branded Gotrax under a d/b/a for Golabs.

76.     As stated above, Zhao as the corporate executive manager of Golabs and Tao Motors had the authority to hire and fire, control daily activities either himself or thru his

subordinates, set the employees work schedule and the right to supervise employees.   All employees were shared between the two companies and controlled by the same management at the same offices engaged in the same business involving the same products.

77.   All defendants had the right to hire/fire employees, were involved in control over their daily functions, especially in light of the fact that Zhao himself admitted that determinations of whether a particular employee can work from home based on company policy was to be approved by the CEO and CFO together which he further clarified was himself and Terry (aka: Qiong Li).  EMIAL

78.   All Defendants were involved in setting the work schedule, supervising and salaries and deductions and benefits of employees, namely Plaintiffs as Plaintiffs were directly controlled by Zhao who was the corporate CFO of both Golabs and Tao and their day to day operations and requests needed the approval of both Zhao and Li who both served as officers and corporate representatives of both Golabs and Tao.

79.   Tao Motors had the right to control Blakely and his work because the determination of his ability to work from home, his overtime entitlement, the lack of an interactive process, the failure to provide FMLA paperwork when the need clearly presented itself, and his termination were all directly the decisions of both Zhao and Li who both served as officers of Golabs and Tao Motors simultaneously while simultaneously Blakely was involved in conducting work for BOTH Golabs and Tao Motors as GoLabs and Tao Motors were involved in the same business of manufacturing and selling scooters as such, Plaintiffs sold Tao Motor scooters out of the same exact office address.

80. Plaintiffs have several emails between Zhao, Blakely and Li in which Plaintiff addresses his need for overtime and in which Zhao and Li responds as the appropriate corporate officers to address such issues. Exhibit N.

81. Plaintiff have several emails between Zhao and Li and Blakely outlining his need for an accommodation under the ADA. Exhibit O.

82. As the CFO of Golabs/Tao Longman Zhao had the power to hire/fire employees, determine the rate and method of their pay and maintained or at minimum facilitated the maintenance of employment records either himself or thru people who he directly hired and managed.

83. As the Director and President for Golabs and the General Manager of Tao Motor, Qiong Li had the power to hire/fire employees, determine the rate and method of their pay and maintained or at minimum facilitated the maintenance of employment records either himself or thru people who he directly hired and managed.

84. As President and Director of GoLabs and General Manager of Tao, Li had control over Blakely's supervision and operational control as the title of General Manager itself implies the highest level of direct operational control of an entity, he was listed on the emails directly addressing Blakley's issues and is the General Manager.

85. Zhao as CFO of both Tao Motor and Golabs maintained employment records.

86. Zhao, Li, Tao Motors, and Golabs, Inc. d/b/a Gotrax were all people who were acting directly or indirectly in the interest of an employer in relation to an employee and therefore all meet the definition of employer under the FLSA 29 U.S.C. §§206-207.

87. Zhao as CFO of both Tao and GoLabs fired Blakely along with Li as officers of both Tao and GoLabs.

88.    Zhao as CFO of both Tao and Golabs was directly and/indirectly involved in the process of Blakely's request for accommodation under the ADA, the lack of an interactive process under the ADA, the termination in violation of the FMLA, the failure to respond with FMLA paperwork upon Blakely's request and the determination that Blakely should be terminated and the request for a doctor's note.   Further, he was directly involved in determining pay for Golabs/Tao employees.

89.    On or about January 2, 2020, Plaintiff Johnson sent an email asking about her hours worked to Matos, Director of Customer Experience to which Ms. Matos replied, "I will ask 'them' about the other hours."   By all information and knowledge the "them" referred to was Li (AKA Terry) and Zhao.

90.    On or about November 26, 2019, Zhao (signing his name as Chief Financial Officer of GoLabs, Inc DBA Gotrax) sent a company-wide email stating "The total pay hours of this pay period from 11.13-11.25 is 72 hours.  Per the earlier payroll calculation, the total hour is 80 Hours. The change is that if I include today's hours, everyone won't be able to receive the payroll on Nov. 29th, and will receive the payment on December 2nd.  The big payment time change is because the bank won't process any payment on Thanksgiving day.   Sorry for the late notice and any inconvenience." This language clearly indicates that Zhao as CFO of Golabs/Tao Motors by his own representations and admissions is intimately involved directly   with the payroll of GoLabs/Tao employees which further defines him as an employer under the FLSA.

91.    On or about January 16, 2020, Zhao sends another email company-wide stating: "The bank notified me that the payroll delayed one day and will be delivered tomorrow."   This email is directly showing Zhao's direct involvement with payroll for Golabs/Tao in his role as CFO of both companies simultaneously and as such he meets the definition of an employer under

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                                    **PAGE 14**

the FLSA, FMLA, ADA and TCHRA, and therefore as the CFO of both Golabs and Tao and Zhao being a corporate executive of both those companies, they both are directly indicated as an employer of Plaintiffs under the FLSA, FMLA, ADA and TCHRA.

92.     Further, Zhao and Li were a corporate executive of both Tao and Golabs and terminated Blakely.  Their power to hire/fire is therefore implied by the fact that he did terminate Blakely.  They supervised and controlled employee work schedules and conditions of employment as nearly the head of the company, sending emails to Plaintiff regarding FMLA and ADA requests directly, stating himself that working from home has to be approved by the CFO (i.e. himself), sending company-wide emails regarding payroll directly to the employees himself, and either himself or thru his directly managed subordinate being involved in the rate and method of payment. As such Li and Zhao were in charge of making sure the company made money and was in charge of making sure money was coming into the company and monitoring money going out of the company.  An important expenditure was employee salaries and payrates.  In most, if not all, companies, the CFO is the ultimate person in the company responsible for employee salaries.  The same is true at Golabs/Tao.  Zhao and Li individually and in their roles as company representatives for both Tao and GoLabs were the ultimate people who determined payrates and salaries and maintained employment records.

93.     Through a text message sent by Matos to Blakely, she states that "Terry has stated you are welcome to return."  Plaintiff has direct knowledge that "Terry" is the short name for Li who is listed as the President and Director of Golabs/Tao.  As such, Terry was directly involved in the entire process of ADA accommodation, FMLA approval, ADA interactive process, and the FLSA overtime failure to pay and retaliation as all conversations were taking place at the same time and he was cc'ed on most emails addressing such issues.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                    **PAGE 15**

94.     In the same text message from Matos to Blakely mentioned in paragraph 47 above, Ms. Matos says: "I will ask Longman – here is a link that I think will work."  This is in reference to Defendants telling Blakely to apply for short-term disability when such benefits were not offered through them and instead providing an internet link to the government's social security disability benefits.  This clearly shows that Zhao was directly involved as CFO of both GoLabs and Tao with Blakely's disability claim and FMLA claim and retaliation through termination based on the same and the failure to engage in the interactive process for a condition that limits a major life activity, namely Anxiety and Depression, and the failure to provide FMLA paperwork as is the burden of an employer to do so when an employee indicates the need for time off based on a serious health condition, namely Anxiety and Depression.

95.      On January 29, 2020, Zhao sent an email at 1:46pm to Blakely stating that "I understand.  But per the company's policy, remote work is only allowed when the CEO and CFO approves it.  If you don't think the company is a good fit for you, you could let me know."  This email is a clear admission that FMLA and ADA time off and/or accommodations are uniquely approved directly by both the CFO and CEO in Blakely's specific case and generally as he refers to it as a "company's policy."

96.     Further, in an email dated January 29, 2020, Zhao states that "Per the company's policy, staff should work at the designated workplace and we don't allow staff to work remotely without both mine and Terry's approval."  Based on Mr. Zhao's representation in paragraph 95 above that both the CEO and CFO needs to approve working from home and then in this email Mr. Zhao clearly states that both "mine and Terry's approval" was necessary for Plaintiff's Blakely to work from home, then Plaintiff by all information and belief and knowledge states that Terry

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                                        **PAGE 16**

and Li and the cryptic "M.C" listed as CEO on Gotrax's website are all the same person who serve as the CEO of Golabs, namely Li.

97.    As such, based upon the Director of Customer Experience, Ms. Matos consistently referring to getting her authority from both Terry and Longman, then based upon all information and knowledge the true CEO of GoLabs during Plaintiff's employment was Terry, AKA: Qiong Li.

98.    Plaintiff is disabled under the ADA as his Major Depression and Anxiety which are diagnosed together have a major impact on major life activities.

99.    Plaintiff is a qualified individual under the ADA as all that is required to be qualified is to have a condition that limits a major life activity and anxiety/depression is a serious medical condition that requires medication to control that if unchecked can cause huge consequences such as panic attacks, serious blood pressure spikes, loss of bowel control, incontinence, inability to breath, passing out and losing consciousness and under the right circumstances death.

100.    The limitations of the disability were clearly made known to Defendants in this case by Blakely himself through email and phone communications both before and especially after January 16, 2020 and by the submission of Blakely's doctor notes.

101.    The employer clearly denied Plaintiff's request to work from home as a reasonable accommodation despite having non-disabled employees in the same position as Blakely working from home.

102.    Plaintiff anxiety/depression was controlled with medication before January 16, 2020 at which time, because of the threat of death to Defendants employees, his condition was no

longer controlled and therefore an accommodation was needed in light of this panic attack/anxiety-triggering situation that was unable to be controlled by Blakely in light of the circumstances.

103.    In the absence of a reasonable accommodation under the ADA, then an FMLA time off would have been a reasonable course of action to at minimum give Blakley a chance to get a medication combination that would control his condition.

104.    Plaintiff had informed Zhao, Matos, and Li that he had Major Depression and Anxiety in the past and therefore placed them on notice of his disability which was controlled by medication until violent threats were made against GoLab/Tao employees and management by a former disgruntled employee which caused his condition to be uncontrolled.

105.    Based on all information and knowledge, Tao Motors and GoLabs employed more than 50 employees at the time of Plaintiff's request for FMLA in the alternative to an ADA accommodation.  Plaintiffs expects to get exact numbers through discovery.

106.    Based on all information and knowledge, Plaintiff knew over 50 employees who worked for Tao Motors and GoLabs.  Plaintiff expects to obtain an employee list through discovery to verify.

107.    Blakely worked more than 12 months and 1250 hours prior to his FMLA request at an employer who based on all information and knowledge had more than 50 employees within 75 miles.

108.    Blakely informed Defendants, particularly Zhao, Li and Matos that he was unable to come back to work due to a serious health condition namely an anxiety attacks provoked by a violent threat at work.

109.    Anxiety is a serious and disabling health condition affecting the major life activities of millions of Americans, including Plaintiff, in a very serious manner.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                                    **PAGE 18**

110.    Plaintiff has no control over his ability to manage his vital functions during a bout of anxiety and can experience symptoms ranging from feeling faint, extreme terror, high blood pressure, heart racing, bowl symptoms,  and many other numerous symptoms that all constitute by themselves a major life activity and who any reasonable person, the law itself and government agencies acknowledge are extremely severe.

111.    As such, Plaintiff became aware of death threats on January 13, 2020 by an email from a former employee by department heads.

112.    On or about January 17, 2020, Plaintiff sent an email to Li (i.e. Terry) who is the President of GoLabs under the Texas Comptroller records stating his anxiety attack problem and requesting a reasonable accommodation of working at home and/or time off.

113.    On or about January 24, 2020, Matos responded to Plaintiff stating they will grant time off until February 17, 2020 when the doctor's note specifically stated that Plaintiff could work at the office even though Blakely needed to work from home which was commonplace for employees in his position.

114.    In fact, several non-disabled employees in Blakely's position were allowed to work from home during the same time period for much longer periods.

115.    Defendants responded by January 24, 2020, stating that Blakely's only options were: 1. Come back there and work fulltime without any accommodations or changes on the job or 2. Get a letter specifying Plaintiff can work from home (even though the note presented already stated this) and then 3. Apply for short-term disability (which the company did not offer).

116.    When Blakely inquired regarding the availability of the disability benefits that Defendants were presenting, he was told that the government offered such benefits and he was given the U.S. government's social security website.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                              **PAGE 19**

117.    Defendants did not respond with FMLA paperwork or granting FMLA leave.

118.    Defendants did not engage in the interactive process under the ADA.

119.    GoLabs and Tao Motors are both employers under the FLSA because they are intimately involved in interstate commerce in that they provide and service a network of scooters and sell scooters throughout the United States.

120.    Defendants were an employer of Plaintiffs as they acted directly or indirectly in the interest of an employer in relation to an employee or anyone acting in the capacity of officer or agent of such labor organization.

121.    Defendants engaged in commerce or in an industry or activity affecting commerce and employed 50 or more employees during the relevant time periods of this case for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year prior to Blakely's request in January 2020.

122.    At all times relevant to this case, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r) and 203(s).

123.    Defendant GoLabs, Inc. employed Plaintiffs during all times relevant to this case,

124.    Defendant Tao Motors, Inc. employed Plaintiffs during all times relevant to this case

125.    Defendant Longman Zhao employed Plaintiffs during all time relevant to this case

126.    Defendant Quiong Li employed Plaintiffs during all times relevant to this case

127.    At all times relevant to this case, Defendants have been an enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s) (1), in that said enterprises have had (a) employees engaged in commerce or in the production of goods or commerce, or (b) employees handling, selling, or otherwise working on goods or materials that

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                                    **PAGE 20**

have been moved in or produced for commerce by any person.  In addition, said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

128.    At all times relevant to this case, Plaintiffs were individual employees who were engaged in commerce pursuant to 29 U.S.C. §§ 206-207.

129.    Plaintiffs were employed by Defendants within the applicable statute of limitations.

130.    Blakely was employed by Defendants as a customer service representative from approximately November 20, 2018 to February 17, 2020.

131.    Johnson was hired by Defendants in Summer 2019 as a part-time customer service representative scheduled for approximately 16 hours per week.

132.    Johnson worked more than 40 hours per week on at least five (5) occasions without being paid proper time and half overtime.

133.    Johnson worked for Defendants in the role of Customer Service/Sales for both Tao and GoLabs.

134.    Johnson consistently received excellent performance feedback and was never written up for behavior or performance.

135.    On or about January 16, 2020, by all information and knowledge, a former employee for Defendants sent death threats the day after he quit by email to department heads.

136.    On or about January 17, 2020, Plaintiff overheard Terry, the CEO, describe this threat to another employee named Denise Matos which included threats against management and employees.

137.    Blakely had anxiety attack when he learned of this threat.

138.    Due to several incidents, Plaintiff suffered from a disabling mental condition, namely Depression and Anxiety diagnosed in 2018.

139.    Plaintiff reported his disability to Defendants on more than one occasion and therefore Defendants were aware of Blakely's disability on or before January 16, 2020.

140.     After learning of the threat, Plaintiff requested that his disability be accommodated by allowing him to work from home.

141.    Several other non-disabled employees, in Blakely's same position regularly worked from home.

142.    Defendants did not provide FMLA paperwork to complete or engage in the interactive process as required under the ADA.

143.    Instead, Defendants requested that Plaintiff provide a doctor's note.

144.    On or about February 11, 2020, Plaintiff's doctor wrote that he should be entitled to an accommodation of working from home.  This note was forwarded to Defendants.

145.    Six days after providing a doctor's note as instructed by Defendants, on or about February 17, 2020, Blakely's access to Defendants' computer system was denied and he was terminated due to his disability and need for FMLA.

146.    In addition, Plaintiff regularly worked significant overtime hours consisting of hours over forty (40) hours in a workweek.

147.    Defendants did pay overtime for a period but then suddenly stopped paying time and a half overtime in compliance with FLSA.

148.    Blakely requested that he be paid for his overtime hours in compliance with the FLSA overtime law by email on February 17, 2020 and was terminated two (2) hours later in retaliation for complaining about his need to be paid in compliance with the FLSA.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                                        **PAGE 22**

149.   The aforementioned acts and conduct by Defendants, its agents and employees were intentional, willful, wanton, malicious and outrageous.

### IV.   CAUSES OF ACTION - VIOLATIONS OF THE FLSA: OVERTIME AND RETALIATION – BLAKELY AND JOHNSON

150.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

151.   Defendants failed to comply with 29 U.S.C. §§ 201-209, because both Plaintiffs performed services for Defendants for which no provisions were made by Defendants to properly pay Plaintiff for those hours worked in excess of forty within a workweek.

152.   Defendants began paying time and half in compliance with the FLSA, but then suddenly changed its practice and stopped doing so.

153.   Defendants failed to keep proper records of Plaintiffs' time worked as well as those records of similarly situated employees.

154.   Defendants failed to pay Johnson and Blakely their time and half pay for weeks in which they worked more than forty (40) hours in a week.

155.   Blakely specifically outlined his overtime demand in an email dated February 17, 2020 to both Li and Zhao, in which he outlined he was owed the following overtime pay:  1.  3-13-2019 – 8.75 hours, 2. 3-28-19 to 4-11-2019 – 1.75 hours, 3.  4-12-19 to 4-28-19 – 8 hours overtime, 4.  5-14-19 to 5-28-19 - 8 hours, 5.  6-27-19 to 7-11-19 - .5 hours, 6.  7-30-19 to 8-13-19 -5.07 hours, 7.  10-12-19 to 10-29-19 – 3 hours, 8.  11-29-19 to 12-11-19 – 16 hours, and 9. 12-12-19 to 12-31-19 – 32 hours.

156.   Johnson was originally scheduled for only 16 hours per week, but recalls working at least five (5) weeks more than forty (40) hours in a week for which she was not paid overtime in compliance with the FLSA.

157.    To the best of her recollection, Johnson worked approximately 35 hours of overtime that was not compensated properly under the FLSA.

158.    As a result of Defendants' intentional, willful, and unlawful acts in refusing to pay Plaintiff time and one half her regular rate of pay for each hour worked in excess of forty (40) per workweek in one or more workweeks, Plaintiff has suffered damages plus incurring reasonably attorneys' fees and costs.

159.    Further, Blakley reported Defendants' failure to pay overtime and then was summarily terminated from his position in retaliation for making such reports.

160.    As a result of Defendants' willful violation of the FLSA, Plaintiffs are entitled to liquidated damages, interest, attorney's fees and court costs, back pay and front pay.

**FAMILY MEDICAL LEAVE ACT VIOLATION - BLAKELY**

161.    The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

162.    The FMLA specifically provides that it is unlawful for an employer to discharge or in any other manner discriminate against an employee for exercising the employee's rights to take FMLA leave.  29 U.S.C. § 2615(a)(2).

163.    Blakely is an employee within the meaning of the FMLA.  Plaintiff was employed by Defendants for at least 12 months and worked at least 1,250 hours in the 12 months preceding the leave need.

164.    Blakely suffered from a serious medical condition, namely Anxiety and Depression which was only controlled by medication and was exasperated by the death threats to employees and management of Defendants by a former disgruntled employee.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                                    **PAGE 24**

165.   Blakely's condition in an uncontrolled statute could result in severe high blood pressure, heart attack, loss of bowel control, loss of consciousness, incontinence, and even death and therefore clearly constitutes a serious health condition under the FMLA.

166.   Defendants are employers within the meaning of the FMLA.  Defendants employed 50 or more employees for each working day of 20 or more calendar workweeks in the current or preceding calendar year.

167.   During the scope of his employment, Plaintiff' suffered a serious health concern and sought to take leave pursuant to the FMLA.

168.   Blakley first requested an accommodation to work from home which was denied. This left working at the office which was the trigger for Plaintiff's serious health condition, namely Anxiety/Depression, the only option.  As such, Plaintiff then asked for time off which was granted in part for around a month and then summarily terminated.

169.   Defendants violated the FMLA by not granting FMLA leave.

170.   Defendants violated its duties under the FMLA to identify the FMLA need and provide relevant paperwork for Plaintiff to apply for time off due to his serious health concern.

171.   Defendants further unlawfully retaliated against Plaintiff for seeking leave under the FMLA.  Specifically, Defendant terminated Plaintiff after discovering Plaintiff had an FMLA need and before granting him a full twelve (12) weeks of protected leave under the FMLA.

172.   As a direct and proximate result of Plaintiff's exercise of rights under the FMLA and his subsequent termination, Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost wages, both past and future, and the value of benefits and fringe benefits.

173.   Because Plaintiff was forced to retain counsel to protect his rights, Plaintiff is also entitled to reasonable attorneys' fees, reasonable expert witness fees, and any other costs of court.

Additionally, Plaintiff is entitled to pre-judgment and post-judgment interest on all sums, including attorneys' fees and costs awarded in this action.

## DISABILITY DISCRIMINATION – AMERICAN WITH DISABILITIES ACT AND TEXAS COMMISSION ON HUMAN RIGHT ACTS – BLAKELY

174.   The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

175. Defendants are "covered entities" and an "employers" as defined by the American with Disabilities Act (ADA) at 42 U.S.C. § 12111(2) & (5) and TCHRA.

176. Plaintiff Blakely is an "employee" as defined by the ADA at 42 U.S.C. §12111(4) and TCHRA.

177. Defendants violated the ADA/TCHRA by discriminating against Plaintiff's Blakely based upon his disability in regards to her termination and failure to accommodate.

178. Defendants were aware of Plaintiff's disability.

179. Plaintiff's disability impaired one or more major life activities as anxiety and depression that is uncontrolled by medication can lead to dangerously high blood pressure, loss of consciousness, loss of bowel control, loss of emotional control, incontinence, and even death.  All these constitute a major life activity and the inability to control them are, by definition, disabilities.

180. Defendants failed to engage in the interactive process with Plaintiff Blakely despite numerous efforts of Plaintiff to explain his disability and requesting processes to obtain an accommodation.  Once Defendants learned of Blakely's need for a reasonably accommodation, they did not even try to accommodate Plaintiff or otherwise work with him to find a job he could do with accommodation.

181. Defendants would not even participate in the interactive process with Blakely in violation of the ADA and only gave him the option to come back without restrictions despite his doctor's note while several other non-disabled employees were allowed to work from home.

182. Instead, they referred Blakely to the governments Social Security website for disability benefits.

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                                    **PAGE 26**

183. As such, Plaintiff was damaged and is entitled to damages under the ADA for such violations by Defendants.

184. Such discrimination has caused Plaintiff to suffer damages of severe emotional distress and lost wages and benefits.  Such discrimination was committed with malice and reckless indifference to the rights of Plaintiff to be treated as a member of a protected class, and to the intent of the statute to protect victims from such actions.  Such malicious or reckless indifference warrants punitive damages as provided in the American with Disabilities Act.

185.    As a result of Defendant's discriminatory actions, Plaintiff has been denied opportunities to which he was entitled and such benefits and privileges that he would have received if he had not been intentionally discriminated against by Defendant.  Plaintiff is now suffering and will continue to suffer past and future pecuniary loss, emotional anguish, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.  This irreparable injuries and monetary damages are the result of Defendants' discriminatory practices and they will continue unless and until this Court grants relief.

## VIII.   ATTORNEYS' FEES AND COSTS

186.    The preceding paragraphs are hereby incorporated by reference as if fully set forth herein.

187.    Plaintiff is entitled to recover attorneys' fees and costs for bringing this action pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. and as allowed by the Texas Labor Code, the FMLA, ADA and the TCHRA.

## IX.    JURY DEMAND

188.    Plaintiff requests a trial by jury.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Quincy Blakley and Kimberly Johnson, respectfully request that this Court award her judgment against Defendants for the following:

**PLAINTIFF'S SECOND AMENDED COMPLAINT**                                                      **PAGE 27**

a.  Actual and consequential damages;

b.  Liquidated damages;

c.  Attorneys' fees and expenses;

d.  Pre-judgment and post-judgment interest as allowed by law;

e.  Judgment against Defendants for an amount equal to Plaintiffs' unpaid back wages at the applicable overtime rate;

f.  Judgments against Defendants that their violations of the FLSA were willful;

g.  Costs of court; and

h.  Such other and further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**The Bhatti Law Firm, PLLC**

s/Vincent J. Bhatti
Vincent J. Bhatti
State Bar No. 24055169
Ditty S. Bhatti
State Bar No. 24062803
5700 Tennyson Parkway, Suite 300
Plano, TX 75024
Telephone: (214) 253-2533
Facsimile: (214) 279-0033
Vincent.bhatti@bhattilawfirm.com
Ditty.bhatti@bhattilawfirm.com
**ATTORNEYS FOR PLAINTIFF,
QUINCY BLAKELY AND
KIMBERLY JOHNSON**

## CERTIFICATE OF SERVICE

I hereby certify that on 6th day of September, 2022, I electronically filed the foregoing document with the Clerk of the Court for the Northern District of Texas, using the CM/ECF system which will send notification of such filing to all counsel of record:

William Chu
The Law Offices of William Chu
4455 LBJ Freeway, Suite 1008
Dallas, TX 75244
FX: (972) 392-9889
Email: wmchulaw@aol.com

s/Vincent J. Bhatti_____